JAMS ARBITRATION TRIBUNAL
NEW YORK, NEW YORK

GARY GREENBERG, ART FUND III LLC, COLORADO ART HOLDINGS LLC, GB FUND LLC, LOANS ON FINE ART LLC, AND LOTUS INVESTMENT CORP.,

Claimants,

-against-

IAN S. PECK, ACG ARRANGEMENT SERVICES LLC, ACG CAPITAL COMPANY, LLC, MODERN ART SERVICES, LLC, PATRIOT CREDIT COMPANY LLC, AND PEGASUS CREDIT COMPANY LLC,

Respondents.

JAMS Ref No. 1425034873

STATE OF NEW YORK    )
                     )  SS.:
COUNTY OF NEW YORK   )

I, IAN S. PECK, declare under penalty of perjury that the following is true and correct:

1. I am a member of ACG Arrangement Services, ACG Capital Company, LLC, Modern Art Services, LLC, Patriot Credit Company LLC and Pegasus Credit Company LLC (collectively, "Respondents" or "ACG"). I submit this affidavit in opposition to the motion for a preliminary injunction of Claimants Gary Greenberg, Art Fund III LLC, Colorado Art Holdings LLC, GB Fund LLC, Loans on Fine Art LLC and Lotus Investment Corp. (collectively, "Claimants" or "Greenberg").

2. In his Arbitration Demand, Greenberg presents a self-serving story, which relies upon a great deal of projection. Without providing any specifics, Greenberg accuses Respondents of unspecified fraud and of operating an alleged "Ponzi" scheme in connection with art loan participation agreements. However, it is Greenberg who has defrauded Respondents.

3. In February 2015, Greenberg asked ACG to provide a $1 million dollar art loan, secured by a mobile by Alexander Calder, to a French national named Dominique Pinault—who Greenberg represented to be of the family of the billionaire Francois Pinault—so that Pinault could pay most of the proceeds to Greenberg. Greenberg provided ACG with a package of due diligence materials he had assembled to establish the means of the borrower and the validity of the collateral, including a screenshot of a bank account reflecting a balance of $1,055,000. *See* Exhs. 1 & 2.

4. In reliance upon Greenberg's due diligence disclosures, ACG made the loan to Pinault, who paid substantially all of the proceeds to Greenberg. However, Pinault soon defaulted on the loan, paying ACG nothing. Upon subsequent investigation, the screen shot of Pinault's alleged bank statement, provided by Greenberg, proved to be a fraud. *See* Exh. 2.

5. ACG would not have extended the loan to Pinault had it known that the bank statement disclosure was false. Furthermore, ACG subsequently learned that the Calder Foundation had not authenticated the mobile provided as collateral for the loan, rendering it worth a fraction of its apparent value. Finally, ACG learned that Pinault was only a distant cousin of Francois Pinault—and was neither wealthy himself nor had access to sufficient capital to pay the loan. Indeed, Pinault had declared bankruptcy ten years earlier, in 2005. *See* Exh. 3.

6. After the Pinault loan went into default, ACG ceased paying Greenberg amounts he was due under loan participation agreements until it could be determined the amount of an appropriate offset for Greenberg's fraud upon ACG.

7. In 2019, Greenberg adopted a new strategy to force ACG to pay amounts Greenberg claimed were due to him, without paying amounts ACG claimed from Greenberg, including compensation for the Pinault loan. Specifically, Greenberg claimed he hired an attorney in New York to prepare a "dossier" of alleged "criminal acts" by me and ACG, which Greenberg would

provide to prosecutors if ACG did not enter into a "settlement agreement" and pay certain amounts to Greenberg. *See* Exh. 4. Greenberg flew from Colorado to New York on October 2, 2019 to meet with Peck and show him the threatening dossier. *See id.* Several days later, on October 8, 2019, Greenberg sent Peck an email entitled "Global settlement deadline," which confirmed a "deadline" of October 24, 2019 for ACG to "settle" with Greenberg—*i.e.*, to pay Greenberg amounts that he demanded in exchange for not providing the dossier to prosecutors. *See* Exh. 5.

8. Although ACG denied Greenberg's allegations, I determined for business reasons to hold my nose and enter into Greenberg's proposed "settlement." Between October 2019 and January 2021, the "settlement" took shape, ultimately in the form of the Settlement Agreement at issue in this case, in which ACG agreed to provide Greenberg a profit share in the sale of Portrait of a Nobleman, by Andrea Del Sarto. Notably, §§ 7 & 15 of the Settlement Agreement expressly seek Greenberg's assurances that he has not sought to induce criminal investigations of ACG, and that Greenberg would destroy the purported "dossier" and other extortion materials. *See* Exh. 6.

9. After execution of the Settlement Agreement, Greenberg and I had an introductory call with Joshua Glazer, of Christies, during which I explained that an affiliate company was in contract to acquire the painting, but had not yet closed. I soon learned that, in an attempt to railroad ACG into an early sale, Greenberg had informed employees of Christie's that ACG was required to sell the painting in an auction on April 22, 2021—confidential settlement information that should not have been disclosed. I thus found himself with diminished bargaining power in a negotiation over the terms of a consignment, which would result in ACG obtaining less at auction for this valuable work.

10. In § 1(a)(i) of the Settlement Agreement, Respondents bargained for the right to change the schedule for the evaluation, consignment and auction or sale date of the painting based

3

upon "advice regarding the sale date from the Auctioneer, or from Robert Simon or another comparable expert." We retained Nicholas Hall, an esteemed expert in old master paintings who previously ran the Old Masters department at Christie's. Hall executed a non-disclosure agreement on March 15, 2021. *See* Exh. 7. Thereafter, Respondents and Hall negotiated a Consulting Agreement, which was executed by Hall on March 26, 2021. *See* Exh. 8.

11.     Throughout this period, Hall was unequivocal on his advice that the painting should not be sold imminently in the April 2021 Christie's auction. In an email, dated March 29, 2021, Hall explained his reasoning as follows, in relevant part:

> I would like to confirm that it is my strong advice that you do not consign the Andrea del Sarto portrait to Christie's April sale. There are several reasons for this.
>
> 1) There is no time to do the necessary marketing to maximise the value of the work.
>
> 2) The auction market, while strong in Asia and Post War and Contemporary is still recovering for Old Masters. Buyers will not be able to, or want to, travel to New York to see the work in person this April.
>
> 3) My understanding of the April sale as it now stands is that there is nothing remotely close to the del Sarto portrait in terms of value. This would leave it exposed. Conversely, one wants to put a painting with good upside in a sale with other works of high value, though not in direct competition.
>
> In conclusion, I think you should take your time to develop a more long term sale strategy. Putting the painting in Christie's April sale is not going to achieve your objectives. I would reiterate what I told Terence, that I am not questioning Christie's ability to get a good price for the painting, I just think that the April sale is far too soon.

Exh. 9.

12.     Hall has never been advised of the present dispute between ACG and Greenberg, and stated this opinion based exclusively on his encyclopedic knowledge and wealth of experience in the art market, and specifically the market for esoteric old masters paintings. After the April

4

2021 Christie's auction took place, Hall advised Respondents that the auction went terribly and that Respondents were wise to avoid a sale under those circumstances. Hall recommends that the painting be restored and sold privately in the fall of 2021.

13. At the time that the TRO in this matter was entered, Respondents have not closed on the acquisition of the painting. Respondents fully intend to perform their obligations under the contract but cannot do so until the TRO is lifted, because completing the acquisition necessarily will result in an encumbrance of the painting.

14. I declare under penalty of perjury that the foregoing is true and correct, to the best of my knowledge, information and belief.

Ian S. Peck

Sworn before me this /5 th day of May, 2021

Notary Public

BISMAR TRUJILLO BARRIOS
NOTARY PUBLIC, STATE OF NEW YORK
No. ...
QUALIFIED IN SUFFOLK COUNTY
TERM EXPIRES JANUARY 7, 2023

5