SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

|  |  |
|---|---|
| VIRGINIA ANNE BONITO<br><br>                              Plaintiff,<br>        -against-<br><br>EMPIRE CHESAPEAKE HOLDINGS LLC, ET AL.,<br><br>                              Defendants. | Index No. 656943/2021<br><br>**AFFIDAVIT IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION AND IN SUPPORT OF CROSS-MOTION TO DISMISS** |

STATE OF NEW YORK    )
                                        )  SS.:
COUNTY OF NEW YORK )

I, IAN S. PECK, declare under penalty of perjury that the following is true and correct:

1.    I am a director of Defendants Empire Chesapeake Holdings LLC and Chelsea Arts Holdings LLC ("Chelsea"), along with myself, collectively, "Empire Chesapeake," and am familiar with the facts set forth herein. I submit this Affidavit in opposition to the motion of Plaintiff Virginia Anne Bonito ("Plaintiff" or "Bonito") for a preliminary injunction and in support of Defendants' cross-motion (1) to dismiss the Complaint; and (2) for an award of sanctions under N.Y.C.R.R. 130-1.1.

2.    Empire Chesapeake was introduced to Bonito through a mutual contact. In or about January 2020, the parties began discussions concerning a possible purchase of Ottaviano de Medici, or Portrait of a Gentleman, by Andrea del Sarto (the "Painting") by Empire Chesapeake

or Chelsea. In February or March 2020, the parties retained counsel and began to negotiate the terms and conditions of a purchase agreement. Empire Chesapeake was represented by Frederick Strasser and Bonito by Daniel Gilden.

3. A number of issues immediately arose which needed to be resolved by Bonito before the parties could close on the transaction. First, a prior creditor of Bonito, Ansible Ventures, Inc. ("Ansible"), had a $80,000 lien against the Painting, which needed to be removed before Empire Chesapeake could complete the purchase. Second, the Painting was located at the Sherman Fairchild Center for Objects Conservation of the Metropolitan Museum of Art (the "Met") and became inaccessible due to the Covid-19 pandemic. Third, the Painting needed substantial restoration before it could be brought to market and needed to be carefully inspected, so a restoration plan could be developed.

4. Thus, before Empire Chesapeake could complete the purchase, Bonito needed to move the Painting from the Met so it could be physically inspected. For this purpose, Bonito agreed that she would move the Painting to Mana Fine Arts, in Jersey City, New Jersey ("Mana"). however, Bonito did not disclose to me that her secured creditor, Ansible, strongly objected to moving the Painting from the Met unless it first received payment.

5. During the course of the negotiations, in 2020, Bonito advised me that she was in desperate need of money. She thus requested that Empire Chesapeake and/or Chelsea make immediate advances of cash to her that would be credited against the purchase price of the Painting.

6. Empire Chesapeake was amenable to making such cash advances, upon the condition that (1) it be granted the exclusive right to purchase the Painting and right of first refusal until December 31, 2020; (2) it be granted a security interest in the Painting; (3) it be credited with, not only the advances, but with all other amounts expended by Empire Chesapeake and/or Chelsea

in connection with the purchase transaction, including insurance payments, expert expenses and attorneys' fees; and (4) such credited advances and expenses would give Empire Chesapeake and/or Chelsea a present direct ownership interest in the Painting proportional to the purchase price (the "Precontractual Agreement").

7. In order to obtain the cash advances that she needed, Bonito agreed to each of the terms of the Precontractual Agreement. Accordingly, pursuant to the Precontractual Agreement, on April 23, 2020, Empire Chesapeake made a cash advance to Bonito in the amount of $3,500. On June 18, 2020, Empire Chesapeake wired Bonito the sum of $21,500.00, as a cash advance against the purchase price of the Painting. *See* **Exhibit 1**, hereto. However, thereafter, Bonito continued to need money and requested further advances of cash from Empire Chesapeake. *See id.* On October 7, 2020, Bonito sent me her wire instructions seeking a further cash advance against the purchase price of the Painting. *See* **Exhibit 2**, hereto. And on October 30, 2020, Empire Chesapeake wired an additional $10,000.00 to Bonito, as a cash advance against the purchase price of the Painting. *See* **Exhibit 3**, hereto.

8. In 2020, Empire Chesapeake also paid $8,800.00 in premiums to insure the Painting for two years. Empire Chesapeake further incurred attorneys' fees in excess of $100,000.00. Pursuant to the parties' Precontractual Agreement, these further amounts were to be treated as advances against the purchase price of the Painting.

9. In December 2020, Empire Chesapeake was in discussions with potential business partner (the "Business Partner") concerning the consignment of the Painting to a major auction house. I thus advised Bonito that, as a condition to proceeding, the parties needed to memorialize their prior Precontractual Agreement in writing. Bonito was amenable to doing so.

10. In an email dated December 8, 2020 (the "Revised Note"), a true and correct copy

of which is attached hereto as **Exhibit 4**, Bonito sent me an attachment which she described as "the revised note from you with your comments from our earlier conversation incorporated." *Id.* The attachment, a true and correct copy of which is attached hereto as **Exhibit 5**, stated in full:

> 7 December 2020
>
> Dear Virginia,
>
> As discussed, this letter is to confirm our interest pursuant to the purchase and sale agreement that the purchaser has advanced certain sums listed below. ***These payments have been made in good faith and at the sellers request with the understanding and agreement that they constitute a pro-rata direct ownership interest in the subject painting by Andrea Del Sarto*** and that they will be applied as a credit against the purchase price as stated in the PSA agreement [as drafted on 18 May 2020, with necessary revisions regarding advances] including all 8 Exhibits, and the Residual Contingent Profit Sharing Agreement.
>
> It is also understood and agreed that the seller has been, since the early May 2020 and subsequent revisions, ready to close this transaction as soon as possible. With the understanding that the above noted closing documents will need revisions regarding the amounts advanced and the new closing date, seller will continue to work in good faith and diligently with the buyer to complete this transaction on or before December 31, 2020. ***The seller grants the purchaser a perfected security interest in the subject painting to secure purchasers rights regarding amounts owed, totaling $43,000 as identified below. Lastly, it is agreed and understood that the seller grants the purchaser the right of exclusivity and a right of first refusal as it relates to the purchaser closing by December 31, 2020 as noted, on the acquisition on the previously agreed terms.***
>
> 1. $35,000 Cash advances against the PSA
> 2. Insurance coverage from January 2020 including transit $8,800
> Total: $ 43,800 upon payment of insurance binder
> Total purchase price of Sarto: $1,206,200 [with credit applied as noted above]
>
> ***Please confirm your acceptance and agreement with the above terms by return email.***
>
> Regards, Ian Peck

4

    Director
    Empire Chesapeake Holdings LLC

*Id.* (emphasis added).

   11.  As Bonito stated in the transmittal email, she herself incorporated into the Revised Note the terms we discussed together orally. By sending me the Revised Note "by return email," Bonito "confirmed [her] acceptance and with the above terms" confirming their binding Precontractual Agreement.

   12.  In reliance upon Bonito's written confirmation in the Revised Note, Empire Chesapeake continued to negotiate towards the purchase of the Painting, continued to incur substantial expenses, and continued to make further cash advances to Bonito, at her request.

   13.  Furthermore, in reliance upon Bonito's confirmed promise of exclusivity and right of first refusal, Empire Chesapeake began negotiating the terms of an agreement with the Business Partner for the consignment and sale of the Painting, in which Empire Chesapeake represented that it had the right to acquire and consign the Painting. *See id.*

   14.  Although I was unaware of this at the time, on December 15, 2020, Bonito's creditor, Ansible, brought a confidential arbitration proceeding against her before the American Arbitration Association (the "Ansible Arbitration") and obtained a series of restraining orders which, among other things, prevented her from freely moving the Painting. *See* Affirmation of Matthew J. Press ("Press Aff.") ¶ 3. The Ansible Arbitration was not of public record.

   15.  Bonito fraudulently omitted to disclose to me, the existence of the Ansible Arbitration let alone any of the limitations placed on her by the arbitrator in the Ansible Arbitration. Empire Chesapeake did not learn of the Ansible Arbitration until Bonito's counsel mentioned it to counsel to Empire Chesapeake nearly a year later, in October or November 2021.

   16.  Due to Bonito's undisclosed limitations, the parties were unable to close on the

purchase and sale of the Painting by December 31, 2020. In order to induce Empire Chesapeake to continue negotiating towards the purchase of the Painting, and to receive further advances from Empire Chesapeake, in January 2021, Bonito orally agreed to extend the terms of the Revised Note and the parties continued to negotiate towards a closing.

17. Consistent with the parties' oral agreement, on January 12, 2021, Bonito emailed me providing her wire instructions for a further cash advance against the purchase price of the Painting. *See* **Exhibit 6**, hereto. On January 29, Bonito texted me concerning the status of two requested advances. *See* **Exhibit 7**, hereto. In response, I stated "Already ordered the smaller backup wire which will be treated as another advance on the purchase agreement for the Sarto. The larger will come as well." *Id.* On February 1, 2021, Bonito again texted me, asking "do you have status info on the much needed advance?" *See* **Exhibit 8**, hereto.

18. On February 5, 2021, Empire Chesapeake wired Bonito a $2,000 cash advance against the purchase price of the Painting. *See* **Exhibit 9**, hereto. Thereafter, on February 22, 2021, Empire Chesapeake wired Bonito a further cash advance of $5,000 against the purchase price of the Painting. *See* **Exhibit 10**, hereto.

19. Empire Chesapeake made these further cash advances in reliance upon Bonito's promise to extend the term of the Revised Note. Empire Chesapeake also made these cash advances in reliance upon Bonito's promise to move the Painting to Mana, in Jersey City, where it could be evaluated by one or more experts in connection with the developing transaction with the Business Partner.

20. In reliance upon Bonito's promise to extend the terms of the Revised Note, on January 20, 2021, Empire Chesapeake entered into a signed contract with the Business Partner to consign and sell the Painting through a major auction house. Under the terms of the contract,

Empire Chesapeake agreed to allow one or more experts to evaluate the work at Mana for consignment. As a result of Bonito's subsequent failure to deliver the Painting for inspection at Mana, the Business Partner has alleged that Empire Chesapeake breached their contract.

21. Empire Chesapeake would not have entered into the contract with the Business Partner had it known about the Ansible Arbitration and the restraining orders obtained by Ansible against Bonito, which effectively prevented Bonito from delivering the Painting for inspection at Mana unless Ansible already had been paid.

22. In January 2021, Empire Chesapeake had assembled the purchase price for the Painting and was prepared to close. However, before it could do so, Bonito needed to deliver the Painting to Mana, so it could be inspected and evaluated by one or more experts in connection with the potential consignment.

23. Despite agreeing to deliver the Painting to Mana—and despite requesting and receiving at least $7,000 in additional cash advances in February 2021 alone—Bonito failed to do so. Nevertheless, stringing Empire Chesapeake along, in hope of obtaining further advances, Bonito repeatedly promised that she was on the verge of doing delivering the Painting to Mana. *See id.*

24. On April 13, 2021, Bonito abruptly announced to me by text that she had "given an exclusive agency to one of my colleagues, a top level private collector." *See* **Exhibit 11**, hereto. Upon information and belief, this was a reference to Cliff Schorer, the principal of Bottom Line, the eventual purported purchaser of the Painting.

25. In doing so, Bonito breached the exclusive agency and right of first refusal she already promised Empire Chesapeake in the Revised Note, which she agreed to extend in 2021, and misappropriated over $60,000 in cash advances paid to her, and over $100,000 in expenses

7

incurred by Empire Chesapeake, in reliance upon her promises.

26. Bonito also ignored the fact that in the Revised Note she already had granted Empire Chesapeake a 13% ownership interest in the Painting, and was not free to sell or transfer the Painting without Empire Chesapeake's consent.

27. Consistent with Bonito's written grant of a security interest in the Painting to Empire Chesapeake in the Revised Note, on May 2, 2021, Empire Chesapeake filed a UCC-1 lien against the Painting. *See* **Exhibit 12**, hereto.

28. I declare under penalty of perjury that the foregoing is true and correct, to the best of my knowledge, information and belief.

_____
Ian S. Peck

Sworn before me this 10th day of January, 2022

_____
Notary Public

MICHAEL SENZ
Notary Public - State of New York
No. 01SE6114952
Qualified in NY, Queens & Kings County
Commission Expires August 30, 2024

8