# UNIFORM STANDARDS OF PROFESSIONAL APPRAISAL PRACTICE

## 2020-2021 EDITION

### Standards 1-4

Published in the United States of America.

ISBN: 978-0-9985335-8-2

**All Rights Reserved**

Copyright © 2020, The Appraisal Foundation.

The Appraisal Foundation reserves all rights with respect to this material. No part of this publication may be reproduced, duplicated, altered or otherwise published in electronic or paper means or in any format or form without the express written permission of the publisher.

**EFFECTIVE:**

January 1, 2020 through December 31, 2021

# PREAMBLE

The purpose of the *Uniform Standards of Professional Appraisal Practice* (USPAP) is to promote and maintain a high level of public trust in appraisal practice by establishing requirements for appraisers. It is essential that appraisers develop and communicate their analyses, opinions, and conclusions to intended users of their services in a manner that is meaningful and not misleading.

The Appraisal Standards Board promulgates USPAP for both appraisers and users of appraisal services. The appraiser's responsibility is to protect the overall public trust and it is the importance of the role of the appraiser that places ethical obligations on those who serve in this capacity. USPAP reflects the current standards of the appraisal profession.

USPAP addresses the ethical and performance obligations of appraisers through DEFINITIONS, Rules, Standards, Standards Rules, and Statements (there are currently no active Statements).

- The DEFINITIONS establish the application of certain terminology in USPAP.
- The ETHICS RULE sets forth the requirements for integrity, impartiality, objectivity, independent judgment, and ethical conduct.
- The RECORD KEEPING RULE establishes the workfile requirements for appraisal and appraisal review assignments.
- The COMPETENCY RULE presents pre-assignment and assignment conditions for knowledge and experience.
- The SCOPE OF WORK RULE presents obligations related to problem identification, research, and analyses.
- The JURISDICTIONAL EXCEPTION RULE preserves the balance of USPAP if a portion is contrary to law or public policy of a jurisdiction.
- The Standards establish the requirements for appraisal and appraisal review and the manner in which each is communicated.
  - STANDARDS 1 and 2 establish requirements for the development and communication of a real property appraisal.
  - STANDARDS 3 and 4 establish requirements for the development and communication of an appraisal review.
  - STANDARDS 5 and 6 establish requirements for the development and communication of a mass appraisal.
  - STANDARDS 7 and 8 establish requirements for the development and communication of a personal property appraisal.
  - STANDARDS 9 and 10 establish requirements for the development and communication of a business or intangible asset appraisal.
- There are currently no active Statements on Appraisal Standards.
- <u>Comments</u> are an integral part of USPAP and have the same weight as the component they address. These extensions of the DEFINITIONS, Rules, and Standards Rules provide interpretation and establish the context and conditions for application.

## When Do USPAP Rules and Standards Apply?

USPAP does not establish who or which assignments must comply. Neither The Appraisal Foundation nor its Appraisal Standards Board is a government entity with the power to make, judge, or enforce law. An appraiser must comply with USPAP when either the service or the appraiser is required by law, regulation, or agreement with the client. Individuals may also choose to comply with USPAP any time that individual is performing the service as an appraiser. In order to comply with USPAP, an appraiser must meet the following obligations:

- An appraiser must act competently and in a manner that is independent, impartial, and objective.
- An appraiser must comply with the ETHICS RULE in all aspects of appraisal practice.
- An appraiser must maintain the data, information and analysis necessary to support his or her opinions for appraisal and appraisal review assignments in accordance with the RECORD KEEPING RULE.
- An appraiser must comply with the COMPETENCY RULE and the JURISDICTIONAL EXCEPTION RULE for all assignments.
- When an appraiser provides an opinion of value in an assignment, the appraiser must also comply with the SCOPE OF WORK RULE, the RECORD KEEPING RULE, the applicable development and reporting Standards and applicable Statements (there are currently no active Statements).
- When an appraiser provides an opinion about the quality of another appraiser's work that was performed as part of

an appraisal or appraisal review assignment, the appraiser must also comply with the SCOPE OF WORK RULE, the RECORD KEEPING RULE, applicable portions of STANDARDS 3 and 4, and applicable Statements (there are currently no active Statements).

- When preparing an appraisal or appraisal review that is a component of a larger assignment with additional opinions, conclusions, or recommendations, the appraisal or appraisal review component must comply with the applicable development and reporting Standards and applicable Statements (there are currently no active Statements), and the remaining component of the assignment must comply with the ETHICS RULE, the COMPETENCY RULE, and the JURISDICTIONAL EXCEPTION RULE.

# DEFINITIONS

Defined terms are intended to clarify the meaning of words or phrases in USPAP that differ from or are not found in popular English dictionaries and, in a few instances, to indicate which popular dictionary definition is meant to be used if there are multiple definitions.

For the purpose of the *Uniform Standards of Professional Appraisal Practice* (USPAP), the following definitions apply:

**APPRAISAL:** (noun) the act or process of developing an opinion of value; an opinion of value.
(adjective) of or pertaining to appraising and related functions such as appraisal practice or appraisal services.

> Comment: An appraisal is numerically expressed as a specific amount, as a range of numbers, or as a relationship (e.g., not more than, not less than) to a previous value opinion or numerical benchmark (e.g., assessed value, collateral value).

**APPRAISAL PRACTICE:** valuation services performed by an individual acting as an appraiser, including but not limited to appraisal and appraisal review.

> Comment: *Appraisal practice* is provided only by appraisers, while *valuation services* are provided by a variety of professionals and others.

> [1] The terms *appraisal* and *appraisal review* are intentionally generic and are not mutually exclusive. For example, an opinion of value may be required as part of an appraisal review assignment.

**APPRAISAL REVIEW**: (noun) the act or process of developing an opinion about the quality of another appraiser's work (i.e., a report, part of a report, a workfile, or some combination of these), that was performed as part of an appraisal or appraisal review assignment; (adjective) of or pertaining to an opinion about the quality of another appraiser's work that was performed as part of an appraisal or appraisal review assignment.

**APPRAISER:** one who is expected to perform valuation services competently and in a manner that is independent, impartial, and objective.[2]

**APPRAISER'S PEERS:** other appraisers who have expertise and competency in a similar type of assignment.[3]

**ASSIGNMENT:** a valuation service that is provided by an appraiser as a consequence of an agreement with a client.

**ASSIGNMENT CONDITIONS:** Assumptions, extraordinary assumptions, hypothetical conditions, laws and regulations, jurisdictional exceptions, and other conditions that affect the scope of work.

**ASSIGNMENT ELEMENTS:** Specific information needed to identify the appraisal or appraisal review problem: client and any other intended users; intended use of the appraiser's opinions and conclusions; type and definition of value; effective date of the appraiser's opinions and conclusions; subject of the assignment and its relevant characteristics; and assignment conditions.

**ASSIGNMENT RESULTS:** An appraiser's opinions or conclusions, not limited to value, that were developed when performing an appraisal assignment, an appraisal review assignment, or a valuation service other than an appraisal or appraisal review.

> Comment: Physical characteristics are not assignment results.

**BIAS:** a preference or inclination that precludes an appraiser's impartiality, independence, or objectivity in an assignment.

**BUSINESS ENTERPRISE:** an entity pursuing an economic activity.

**BUSINESS EQUITY:** the interests, benefits, and rights inherent in the ownership of a business enterprise or a part thereof in any form (including, but not necessarily limited to, capital stock, partnership interests, cooperatives, sole proprietorships, options, and

---

[1]    See Advisory Opinion 21, *USPAP Compliance*.
[2]    See PREAMBLE and Advisory Opinion 21, *USPAP Compliance*.
[3]    See Advisory Opinion 29, *An Acceptable Scope of Work*.

warrants).

**CLIENT:** the party or parties (i.e., individual, group, or entity) who engage an appraiser by employment or contract in a specific assignment, whether directly or through an agent.

**CONFIDENTIAL INFORMATION:** information that is either:

- identified by the client as confidential when providing it to an appraiser and that is not available from any other source;[4] or
- classified as confidential or private by applicable law or regulation.[5]

**COST:** the actual or estimated amount required to create, reproduce, replace, or obtain a property.

**CREDIBLE:** worthy of belief.

> Comment: Credible assignment results require support, by relevant evidence and logic, to the degree necessary for the intended use.

**EFFECTIVE DATE:** the date to which an appraiser's analyses, opinions, and conclusions apply; also referred to as date of value.

**EXPOSURE TIME:** an opinion, based on supporting market data, of the length of time that the property interest being appraised would have been offered on the market prior to the hypothetical consummation of a sale at market value on the effective date of the appraisal.[6]

**EXTRAORDINARY ASSUMPTION:** an assignment-specific assumption as of the effective date regarding uncertain information used in an analysis which, if found to be false, could alter the appraiser's opinions or conclusions.

> Comment: Uncertain information might include physical, legal, or economic characteristics of the subject property; or conditions external to the property, such as market conditions or trends; or the integrity of data used in an analysis.

**FEASIBILITY ANALYSIS:** a study of the cost-benefit relationship of an economic endeavor.

**HYPOTHETICAL CONDITION:** a condition, directly related to a specific assignment, which is contrary to what is known by the appraiser to exist on the effective date of the assignment results, but is used for the purpose of analysis.

> Comment: Hypothetical conditions are contrary to known facts about physical, legal, or economic characteristics of the subject property; or about conditions external to the property, such as market conditions or trends; or about the integrity of data used in an analysis.

**INTANGIBLE PROPERTY (INTANGIBLE ASSETS):** nonphysical assets, including but not limited to franchises, trademarks, patents, copyrights, goodwill, equities, securities, and contracts as distinguished from physical assets such as facilities and equipment.

**INTENDED USE:** the use(s) of an appraiser's reported appraisal or appraisal review assignment results, as identified by the appraiser based on communication with the client at the time of the assignment.[7]

**INTENDED USER:** the client and any other party as identified, by name or type, as users of the appraisal or appraisal review report by the appraiser, based on communication with the client at the time of the assignment.[8]

---

[4]   See Confidentiality section of the ETHICS RULE.

[5]   For example, pursuant to the passage of the Gramm-Leach-Bliley Act in November 1999, some public agencies have adopted privacy regulations that affect appraisers. The Federal Trade Commission (FTC) issued two rules. The first rule (16 CFR 313) focuses on the protection of "non-public personal information" provided by consumers to those involved in financial activities "found to be closely related to banking or usual in connection with the transaction of banking." These activities include "appraising real or personal property." See GLB-Privacy. The second rule (16 CFR 314) requires appraisers to safeguard customer non-public personal information. See GLB-Safeguards-Rule. Significant liability exists for appraisers should they fail to comply with these FTC rules.

[6]   See Advisory Opinion 35, *Reasonable Exposure Time in Real and Personal Property Opinions of Value*.

[7]   See Advisory Opinion 36, *Identification and Disclosure of Client, Intended Use, and Intended Users* (AO-36).

[8]   See AO-36.

**JURISDICTIONAL EXCEPTION:** an assignment condition established by applicable law or regulation, which precludes an appraiser from complying with a part of USPAP.

**MARKET VALUE:** a type of value, stated as an opinion, that presumes the transfer of a property (i.e., a right of ownership or a bundle of such rights), as of a certain date, under specific conditions set forth in the value definition that is identified by the appraiser as applicable in an appraisal.[9]

> Comment: Appraisers are cautioned to identify the exact definition of market value, and its authority, applicable in each appraisal completed for the purpose of market value.

**MASS APPRAISAL:** the process of valuing a universe of properties as of a given date using standard methodology, employing common data, and allowing for statistical testing.

**MASS APPRAISAL MODEL:** a mathematical expression of how supply and demand factors interact in a market.

**MISLEADING:** Intentionally or unintentionally misrepresenting, misstating, or concealing relevant facts or conclusions.

**PERSONAL INSPECTION:** a physical observation performed to assist in identifying relevant property characteristics in a valuation service.

> Comment: An appraiser's inspection is typically limited to those things readily observable without the use of special testing or equipment. Appraisals of some types of property, such as gems and jewelry, may require the use of specialized equipment. An inspection by an appraiser is not the equivalent of an inspection by an inspection professional (e.g., a structural engineer, home inspector, or art conservator).[10]

**PERSONAL PROPERTY:** any tangible or intangible article that is subject to ownership and not classified as real property, including identifiable tangible objects that are considered by the general public as being "personal," such as furnishings, artwork, antiques, gems and jewelry, collectibles, machinery and equipment; and intangible property that is created and stored electronically such as plans for installation art, choreography, emails, or designs for digital tokens.

**PHYSICAL CHARACTERISTICS:** attributes of a property that are observable or measurable as a matter of fact, as distinguished from opinions and conclusions, which are the result of some level of analysis or judgment.

**PRICE:** the amount asked, offered, or paid for a property.

> Comment: Once stated, *price* is a fact, whether it is publicly disclosed or retained in private. Because of the financial capabilities, motivations, or special interests of a given buyer or seller, the price paid for a property may or may not have any relation to the *value* that might be ascribed to that property by others.

**REAL ESTATE:** an identified parcel or tract of land, including improvements, if any.

**REAL PROPERTY:** the interests, benefits, and rights inherent in the ownership of real estate.

**RELEVANT CHARACTERISTICS:** features that may affect a property's value or marketability such as legal, economic, or physical characteristics.

**REPORT:** any communication, written or oral, of an appraisal or appraisal review that is transmitted to the client or a party authorized by the client upon completion of an assignment.

**SCOPE OF WORK:** the type and extent of research and analyses in an appraisal or appraisal review assignment.[11]

**SIGNATURE:** personalized evidence indicating authentication of the work performed by the appraiser and the acceptance of the responsibility for content, analyses, and the conclusions in the report.

**VALUATION SERVICE:** a service pertaining to an aspect of property value, regardless of the type of service and whether it is

---

[9]    See General Comment on Market Value Definitions in Advisory Opinion 22, *Scope of Work in Market Value Appraisal Assignments for Real Property*.

[10]   See Advisory Opinion 2, *Inspection of Subject Property*.

[11]   See SCOPE OF WORK RULE.

performed by appraisers or by others.

**VALUE:** the monetary relationship between properties and those who buy, sell, or use those properties, expressed as an opinion of the worth of a property at a given time.

> Comment: In appraisal practice, value will always be qualified - for example, market value, liquidation value, investment value.

**WORKFILE:** data, information, and documentation necessary to support the appraiser's opinions and conclusions and to show compliance with USPAP.[12]

---

[12]   See RECORD KEEPING RULE.

# ETHICS RULE

An appraiser must promote and preserve the public trust inherent in appraisal practice by observing the highest standards of professional ethics.

An appraiser must comply with USPAP when obligated by law or regulation, or by agreement with the client or intended users. In addition to these requirements, an individual should comply any time that individual represents that he or she is performing the service as an appraiser.

> Comment: This Rule specifies the personal obligations and responsibilities of the individual appraiser. An individual appraiser employed by a group or organization that conducts itself in a manner that does not conform to USPAP should take steps that are appropriate under the circumstances to ensure compliance with USPAP.

This ETHICS RULE is divided into three sections: **Conduct**, **Management**, and **Confidentiality**, which apply to all appraisal practice.

**CONDUCT:**
An appraiser must perform assignments with impartiality, objectivity, and independence, and without accommodation of personal interests.

An appraiser:

- must not perform an assignment with bias;
- must not advocate the cause or interest of any party or issue;
- must not agree to perform an assignment that includes the reporting of predetermined opinions and conclusions;
- must not misrepresent his or her role when providing valuation services that are outside of appraisal practice;[13]
- must not communicate assignment results with the intent to mislead or to defraud;
- must not use or communicate a report or assignment results known by the appraiser to be misleading or fraudulent;
- must not knowingly permit an employee or other person to communicate a report or assignment results that are misleading or fraudulent;
- must not use or rely on unsupported conclusions relating to characteristics such as race, color, religion, national origin, gender, marital status, familial status, age, receipt of public assistance income, handicap, or an unsupported conclusion that homogeneity of such characteristics is necessary to maximize value;
- must not engage in criminal conduct;
- must not willfully or knowingly violate the requirements of the RECORD KEEPING RULE; and
- must not perform an assignment in a grossly negligent manner.

> Comment: Development standards (1-1, 3-1, 5-1, 7-1 and 9-1) address the requirement that "an appraiser must not render appraisal services in a careless or negligent manner." The above requirement deals with an appraiser being grossly negligent in performing an assignment which would be a violation of the Conduct section of the ETHICS RULE.

If known prior to agreeing to perform an assignment, and/or if discovered at any time during the assignment, an appraiser must disclose to the client, and in each subsequent report certification:

- any current or prospective interest in the subject property or parties involved; and
- any services regarding the subject property performed by the appraiser, as an appraiser or in any other capacity, within the three-year period immediately preceding the agreement to perform the assignment.

---

[13]   See Advisory Opinion 21, *USPAP Compliance.*

Comment: Disclosing the fact that the appraiser has previously appraised the property is permitted except in the case when an appraiser has agreed with the client to keep the mere occurrence of a prior assignment confidential. If an appraiser has agreed with a client not to disclose that he or she has appraised a property, the appraiser must decline all subsequent agreements to perform assignments that fall within the three-year period.

In assignments in which there is no appraisal or appraisal review report, only the initial disclosure to the client is required.

**MANAGEMENT:**

**An appraiser must disclose that he or she paid a fee or commission, or gave a thing of value in connection with the procurement of an assignment.**

Comment: The disclosure must appear in the certification and in any transmittal letter in which conclusions are stated; however, disclosure of the amount paid is not required. In groups or organizations engaged in appraisal practice, intra-company payments to employees for business development do not require disclosure.

**An appraiser must not agree to perform an assignment, or have a compensation arrangement for an assignment, that is contingent on any of the following:**

1. **the reporting of a predetermined result (e.g., opinion of value);**
2. **a direction in assignment results that favors the cause of the client;**
3. **the amount of a value opinion;**
4. **the attainment of a stipulated result (e.g., that the loan closes, or taxes are reduced); or**
5. **the occurrence of a subsequent event directly related to the appraiser's opinions and specific to the assignment's purpose.**

**An appraiser must not advertise for or solicit assignments in a manner that is false, misleading, or exaggerated.**

**An appraiser must affix, or authorize the use of, his or her signature to certify recognition and acceptance of his or her USPAP responsibilities in an appraisal or appraisal review assignment (see Standards Rules 2-3, 4-3, 6-3, 8-3, and 10-3). An appraiser may authorize the use of his or her signature only on an assignment-by-assignment basis.**

**An appraiser must not affix the signature of another appraiser without his or her consent.**

Comment: An appraiser must exercise due care to prevent unauthorized use of his or her signature. An appraiser exercising such care is not responsible for unauthorized use of his or her signature.

**CONFIDENTIALITY:**

**An appraiser must protect the confidential nature of the appraiser-client relationship.[14]**

**An appraiser must act in good faith with regard to the legitimate interests of the client in the use of confidential information and in the communication of assignment results.**

**An appraiser must be aware of, and comply with, all confidentiality and privacy laws and regulations applicable in an assignment.[15]**

---

[14]   See Advisory Opinion 27, *Appraising the Same Property for a New Client.*

[15]   For example, pursuant to the passage of the Gramm-Leach-Bliley Act in November 1999, some public agencies have adopted privacy regulations that affect appraisers. The Federal Trade Commission (FTC) issued two rules. The first rule (16 CFR 313) focuses on the protection of "non-public personal information" provided by consumers to those involved in financial activities "found to be closely related to banking or usual in connection with the transaction of banking." These activities include "appraising real or personal property." See GLB-Privacy. The second rule (16 CFR 314) requires appraisers to safeguard customer non-public personal information. See GLB-Safeguards-Rule. Significant liability exists for appraisers should they fail to comply with these FTC rules.

An appraiser must not disclose: (1) confidential information; or (2) assignment results to anyone other than:

- the client;
- parties specifically authorized by the client;
- state appraiser regulatory agencies;
- third parties as may be authorized by due process of law; or
- a duly authorized professional peer review committee except when such disclosure to a committee would violate applicable law or regulation.

An appraiser must take reasonable steps to safeguard access to confidential information and assignment results by unauthorized individuals, whether such information or results are in physical or electronic form.

An appraiser must ensure that employees, co-workers, sub-contractors, or others who may have access to confidential information or assignment results, are aware of the prohibitions on disclosure of such information or results.

A member of a duly authorized professional peer review committee must not disclose confidential information presented to the committee.

> Comment: When all confidential elements of confidential information, and assignment results are removed through redaction or the process of aggregation, client authorization is not required for the disclosure of the remaining information, as modified.

# RECORD KEEPING RULE

An appraiser must prepare a workfile for each appraisal or appraisal review assignment. A workfile must be in existence prior to the issuance of any report or other communication of assignment results. A written summary of an oral report must be added to the workfile within a reasonable time after the issuance of the oral report.

The workfile must include:

- the name of the client and the identity, by name or type, of any other intended users;
- true copies of all written reports, documented on any type of media. (A true copy is a replica of the report transmitted to the client. A photocopy or an electronic copy of the entire report transmitted to the client satisfies the requirement of a true copy.);
- summaries of all oral reports or testimony, or a transcript of testimony, including the appraiser's signed and dated certification; and
- all other data, information, and documentation necessary to support the appraiser's opinions and conclusions and to show compliance with USPAP, or references to the location(s) of such other data, information, and documentation.

A workfile in support of a Restricted Appraisal Report or an oral appraisal report must be sufficient for the appraiser to produce an Appraisal Report. A workfile in support of an oral appraisal review report must be sufficient for the appraiser to produce an Appraisal Review Report.

An appraiser must retain the workfile for a period of at least five years after preparation or at least two years after final disposition of any judicial proceeding in which the appraiser provided testimony related to the assignment, whichever period expires last.

An appraiser must have custody of the workfile, or make appropriate workfile retention, access, and retrieval arrangements with the party having custody of the workfile. This includes ensuring that a workfile is stored in a medium that is retrievable by the appraiser throughout the prescribed record retention period.

An appraiser having custody of a workfile must allow other appraisers with workfile obligations related to an assignment appropriate access and retrieval for the purpose of:

- submission to state appraiser regulatory agencies;
- compliance with due process of law;
- submission to a duly authorized professional peer review committee; or
- compliance with retrieval arrangements.

  Comment: A workfile must be made available by the appraiser when required by a state appraiser regulatory agency or due process of law.

An appraiser who willfully or knowingly fails to comply with the obligations of this RECORD KEEPING RULE is in violation of the ETHICS RULE.

# COMPETENCY RULE

An appraiser must: (1) be competent to perform the assignment; (2) acquire the necessary competency to perform the assignment; or (3) decline or withdraw from the assignment. In all cases, the appraiser must perform competently when completing the assignment.

Perfection is impossible to attain, and competence does not require perfection. However, an appraiser must not render appraisal services in a careless or negligent manner. This Rule requires an appraiser to use due diligence and due care.

BEING COMPETENT
An appraiser must determine, prior to agreeing to perform an assignment, that he or she can perform the assignment competently. Competency requires:

1. the ability to properly identify the problem to be addressed;
2. the knowledge and experience to complete the assignment competently; and
3. recognition of, and compliance with, laws and regulations that apply to the appraiser or to the assignment.

Comment: Competency may apply to factors such as, but not limited to, an appraiser's familiarity with a specific type of property or asset, a market, a geographic area, an intended use, specific laws and regulations, or an analytical method. If such a factor is necessary for an appraiser to develop credible assignment results, the appraiser is responsible for having the competency to address that factor or for following the steps outlined below to satisfy this COMPETENCY RULE.

For assignments with retrospective opinions and conclusions, the appraiser must meet the requirements of this COMPETENCY RULE at the time the assignment is performed, rather than the effective date.

ACQUIRING COMPETENCY
If an appraiser determines he or she is not competent prior to agreeing to perform an assignment, the appraiser must:

1. disclose the lack of knowledge and/or experience to the client before agreeing to perform the assignment;
2. take all steps necessary or appropriate to complete the assignment competently; and
3. describe, in the report, the lack of knowledge and/or experience and the steps taken to complete the assignment competently.

Comment: Competency can be acquired in various ways, including, but not limited to, personal study by the appraiser, association with an appraiser reasonably believed to have the necessary knowledge and/or experience, or retention of others who possess the necessary knowledge and/or experience.

In an assignment where geographic competency is necessary, an appraiser who is not familiar with the relevant market characteristics must acquire an understanding necessary to produce credible assignment results for the specific property type and market involved.

When facts or conditions are discovered during the course of an assignment that cause an appraiser to determine, at that time, that he or she lacks the required knowledge and experience to complete the assignment competently, the appraiser must:

1.  notify the client;
2.  take all steps necessary or appropriate to complete the assignment competently; and
3.  describe, in the report, the lack of knowledge and/or experience and the steps taken to complete the assignment competently.

<u>LACK OF COMPETENCY</u>

If the assignment cannot be completed competently, the appraiser must decline or withdraw from the assignment.

# SCOPE OF WORK RULE[16]

**For each appraisal and appraisal review assignment, an appraiser must:**

1. **identify the problem to be solved;**
2. **determine and perform the scope of work necessary to develop credible assignment results; and**
3. **disclose the scope of work in the report.**

**An appraiser must properly identify the problem to be solved in order to determine the appropriate scope of work. The appraiser must be prepared to demonstrate that the scope of work is sufficient to produce credible assignment results.**

<u>Comment</u>: Scope of work includes, but is not limited to:

- the extent to which the property is identified;
- the extent to which tangible property is inspected;
- the type and extent of data researched; and
- the type and extent of analyses applied to arrive at opinions or conclusions.

Appraisers have broad flexibility and significant responsibility in determining the appropriate scope of work for an appraisal or appraisal review assignment.

Credible assignment results require support by relevant evidence and logic. The credibility of assignment results is always measured in the context of the intended use.

<u>**PROBLEM IDENTIFICATION**</u>
**An appraiser must gather and analyze information about those assignment elements that are necessary to properly identify the appraisal or appraisal review problem to be solved.**

<u>Comment</u>: The assignment elements necessary for problem identification are addressed in the applicable Standards Rules (i.e., SR 1-2, SR 3-2, SR 5-2, SR 7-2, and SR 9-2). In an appraisal assignment, for example, identification of the problem to be solved requires the appraiser to identify the following assignment elements:

- client and any other intended users;
- intended use of the appraiser's opinions and conclusions;
- type and definition of value;
- effective date of the appraiser's opinions and conclusions;
- subject of the assignment and its relevant characteristics; and
- assignment conditions.

This information provides the appraiser with the basis for determining the type and extent of research and analyses to include in the development of an appraisal. Similar information is necessary for problem identification in appraisal review assignments.

Communication with the client is required to establish most of the information necessary for problem identification. However, the identification of relevant characteristics is a judgment made by the appraiser that requires competency in that type of assignment.

Assignment conditions include assumptions, extraordinary assumptions, hypothetical conditions, laws and regulations, jurisdictional exceptions, and other conditions that affect the scope of work. Laws include constitutions, legislative and court-made law, administrative rules, and ordinances. Regulations include rules or orders, having legal force, issued by

---

[16] See Advisory Opinion 28, *Scope of Work Decision, Performance, and Disclosure* and Advisory Opinion 29, *An Acceptable Scope of Work*.

an administrative agency.

## SCOPE OF WORK ACCEPTABILITY[17]
**The scope of work must include the research and analyses that are necessary to develop credible assignment results.**

> Comment: The scope of work is acceptable when it meets or exceeds:

> - the expectations of parties who are regularly intended users for similar assignments; and
> - what an appraiser's peers' actions would be in performing the same or a similar assignment.

> Determining the scope of work is an ongoing process in an assignment. Information or conditions discovered during the course of an assignment might cause the appraiser to reconsider the scope of work.

> An appraiser must be prepared to support the decision to exclude any investigation, information, method, or technique that would appear relevant to the client, another intended user, or the appraiser's peers.

**An appraiser must not allow assignment conditions to limit the scope of work to such a degree that the assignment results are not credible in the context of the intended use.**

> Comment: If relevant information is not available because of assignment conditions that limit research opportunities (such as conditions that place limitations on inspection or information gathering), an appraiser must withdraw from the assignment unless the appraiser can:

> - modify the assignment conditions to expand the scope of work to include gathering the information; or
> - use an extraordinary assumption about such information, if credible assignment results can still be developed.

**An appraiser must not allow the intended use of an assignment or a client's objectives to cause the assignment results to be biased.**

## DISCLOSURE OBLIGATIONS
**The report must contain sufficient information to allow the client and other intended users to understand the scope of work performed. The information disclosed must be appropriate for the intended use of the assignment results.**

> Comment: Proper disclosure is required because clients and other intended users rely on the assignment results. Sufficient information includes disclosure of research and analyses performed and might also include disclosure of research and analyses not performed.

> The appraiser has broad flexibility and significant responsibility in the level of detail and manner of disclosing the scope of work in the appraisal report or appraisal review report. The appraiser may, but is not required to, consolidate the disclosure in a specific section or sections of the report, or use a particular label, heading or subheading. An appraiser may choose to disclose the scope of work as necessary throughout the report.

---

[17] See Advisory Opinion 29, *An Acceptable Scope of Work*.

# JURISDICTIONAL EXCEPTION RULE

**If any applicable law or regulation precludes compliance with any part of USPAP, only that part of USPAP becomes void for that assignment.**

> Comment: When compliance with USPAP is required by federal law or regulation, no part of USPAP can be voided by a law or regulation of a state or local jurisdiction.

**In an assignment involving a jurisdictional exception, an appraiser must:**

1. **identify the law or regulation that precludes compliance with USPAP;**
2. **comply with that law or regulation;**
3. **clearly and conspicuously disclose in the report the part of USPAP that is voided by that law or regulation; and**
4. **cite in the report the law or regulation requiring this exception to USPAP compliance.**

> Comment: The JURISDICTIONAL EXCEPTION RULE provides a saving or severability clause intended to preserve the balance of USPAP if compliance with one or more of its parts is precluded by the law or regulation of a jurisdiction. When an appraiser properly follows this Rule in disregarding a part of USPAP, there is no violation of USPAP.
>
> Law includes constitutions, legislative and court-made law, and administrative rules and ordinances. Regulations include rules or orders having legal force, issued by an administrative agency. Instructions from a client or attorney do not establish a jurisdictional exception.

# STANDARD 1: REAL PROPERTY APPRAISAL, DEVELOPMENT

**In developing a real property appraisal, an appraiser must identify the problem to be solved, determine the scope of work necessary to solve the problem, and correctly complete research and analyses necessary to produce a credible appraisal.**

> Comment: The requirements set forth in STANDARD 1 follow the appraisal development process in the order of topics addressed and can be used by appraisers and the users of appraisal services as a checklist.

## STANDARDS RULE 1-1. GENERAL DEVELOPMENT REQUIREMENTS
**In developing a real property appraisal, an appraiser must:**

(a) **be aware of, understand, and correctly employ those recognized methods and techniques that are necessary to produce a credible appraisal;**

> Comment: This Standards Rule recognizes that the principle of change continues to affect the manner in which appraisers perform appraisal services. Changes and developments in the real estate field have a substantial impact on the appraisal profession. Important changes in the cost and manner of constructing and marketing commercial, industrial, and residential real estate as well as changes in the legal framework in which real property rights and interests are created, conveyed, and mortgaged have resulted in corresponding changes in appraisal theory and practice. Social change has also had an effect on appraisal theory and practice. To keep abreast of these changes and developments, the appraisal profession is constantly reviewing and revising appraisal methods and techniques and devising new methods and techniques to meet new circumstances. For this reason, it is not sufficient for appraisers to simply maintain the skills and the knowledge they possess when they become appraisers. Each appraiser must continuously improve his or her skills to remain proficient in real property appraisal.

(b) **not commit a substantial error of omission or commission that significantly affects an appraisal; and**

> Comment: An appraiser must use sufficient care to avoid errors that would significantly affect his or her opinions and conclusions. Diligence is required to identify and analyze the factors, conditions, data, and other information that would have a significant effect on the credibility of the assignment results.

(c) **not render appraisal services in a careless or negligent manner, such as by making a series of errors that, although individually might not significantly affect the results of an appraisal, in the aggregate affects the credibility of those results.**

## STANDARDS RULE 1-2. PROBLEM IDENTIFICATION
**In developing a real property appraisal, an appraiser must:**

(a) **identify the client and other intended users;[18]**

(b) **identify the intended use of the appraiser's opinions and conclusions;**

> Comment: An appraiser must not allow the intended use of an assignment or a client's objectives to cause the assignment results to be biased.[19]

(c) **identify the type and definition of value, and ascertain whether the value is to be the most probable price:**

   (i) **in terms of cash; or**

   (ii) **in terms of financial arrangements equivalent to cash; or**

---

[18] See Advisory Opinion 36, *Identification and Disclosure of Client, Intended Use, and Intended Users?* Also applicable to Standards Rule 1-2 (b).

[19] See Advisory Opinion 19, *Unacceptable Assignment Conditions in Real Property Appraisal Assignments.*

(iii)  in other precisely defined terms; and

(iv)  if the opinion of value is to be based on non-market financing or financing with unusual conditions or incentives, identify the terms of such financing and any influences on value;

Comment: When reasonable exposure time is a component of the definition for the value opinion being developed, the appraiser must also develop an opinion of reasonable exposure time linked to that value opinion.[20]

(d)  identify the effective date of the appraiser's opinions and conclusions;[21]

(e)  identify, from sources the appraiser reasonably believes to be reliable, the characteristics of the property that are relevant to the type and definition of value and intended use of the appraisal,[22] including:

(i)  its location and physical, legal, and economic characteristics;

(ii)  the real property interest to be valued;

(iii)  any personal property, trade fixtures, or intangible assets that are not real property but are included in the appraisal;

(iv)  any known easements, restrictions, encumbrances, leases, reservations, covenants, contracts, declarations, special assessments, ordinances, or other items of a similar nature; and

(v)  whether the subject property is a fractional interest, physical segment, or partial holding;

Comment on (i)–(v): An appraiser may use any combination of a property inspection, documents, such as a legal description, address, map reference, copy of a survey or map, property sketch, photographs, or other information to identify the relevant characteristics of the subject property.

When appraising proposed improvements, an appraiser must examine and have available for future examination, plans, specifications, or other documentation sufficient to identify the extent and character of the proposed improvements.[23]

Identification of the real property interest appraised can be based on a review of copies or summaries of title descriptions or other documents that set forth any known encumbrances.

An appraiser is not required to value the whole when the subject of the appraisal is a fractional interest, a physical segment, or a partial holding.

(f)  identify any extraordinary assumptions necessary in the assignment. An extraordinary assumption may be used in an assignment only if:

(i)  the extraordinary assumption is required to properly develop credible opinions and conclusions;

(ii)  the appraiser has a reasonable basis for the extraordinary assumption; and

(iii)  use of the extraordinary assumption results in a credible analysis;

(g)  identify any hypothetical conditions necessary in the assignment. A hypothetical condition may be used in an assignment only if:

(i)  use of the hypothetical condition is clearly required for legal purposes, for purposes of reasonable analysis, or for purposes of comparison; and

---

[20]  See Advisory Opinion 35, Reasonable Exposure Time in Real and Personal Property Opinions of Value.

[21]  See Advisory Opinion 34, Retrospective and Prospective Value Opinions.

[22]  See Advisory Opinion 2, Inspection of Subject Property, and Advisory Opinion 23, Identifying the Relevant Characteristics of the Subject Property of a Real Property Appraisal Assignment.

[23]  See Advisory Opinion 17, Appraisals of Real Property with Proposed Improvements.

    (ii)    use of the hypothetical condition results in a credible analysis; and

(h)  determine the scope of work necessary to produce credible assignment results in accordance with the SCOPE OF WORK RULE.[24]

## STANDARDS RULE 1-3, MARKET ANALYSIS, AND HIGHEST AND BEST USE

**When necessary for credible assignment results in developing a market value opinion, an appraiser must:**

(a)  identify and analyze the effect on use and value of:

    (i)    existing land use regulations;

    (ii)   reasonably probable modifications of such land use regulations;

    (iii)  economic supply and demand;

    (iv)  the physical adaptability of the real estate; and

    (v)   market area trends; and

    <u>Comment</u>: An appraiser must avoid making an unsupported assumption or premise about market area trends, effective age, and remaining life.

(b)  develop an opinion of the highest and best use of the real estate.

    <u>Comment</u>: An appraiser must analyze the relevant legal, physical, and economic factors to the extent necessary to support the appraiser's highest and best use conclusion(s).

## STANDARDS RULE 1-4, APPROACHES TO VALUE

**In developing a real property appraisal, an appraiser must collect, verify, and analyze all information necessary for credible assignment results.**

(a)  When a sales comparison approach is necessary for credible assignment results, an appraiser must analyze such comparable sales data as are available to indicate a value conclusion.

(b)  When a cost approach is necessary for credible assignment results, an appraiser must:

    (i)    develop an opinion of site value by an appropriate appraisal method or technique;

    (ii)   analyze such comparable cost data as are available to estimate the cost new of the improvements (if any); and

    (iii)  analyze such comparable data as are available to estimate the difference between the cost new and the present worth of the improvements (depreciation).

(c)  When an income approach is necessary for credible assignment results, an appraiser must:

    (i)    analyze such comparable rental data as are available and/or the potential earnings capacity of the property to estimate the gross income potential of the property;

    (ii)   analyze such comparable operating expense data as are available to estimate the operating expenses of the property;

    (iii)  analyze such comparable data as are available to estimate rates of capitalization and/or rates of discount;

    (iv)  base projections of future rent and/or income potential and expenses on reasonably clear and appropriate evidence;[25] and

    (v)   weigh historical information and trends, current supply and demand factors affecting such trends, and

---

[24]  See Advisory Opinion 28, *Scope of Work Decision, Performance, and Disclosure*, and Advisory Opinion 29, *An Acceptable Scope of Work*.

[25]  See Advisory Opinion 33, *Discounted Cash Flow Analysis*.

anticipated events such as competition from developments under construction, when developing income and expense statements and cash flow projections.

(d) When developing an opinion of the value of a leased fee estate or a leasehold estate, an appraiser must analyze the effect on value, if any, of the terms and conditions of the lease(s).

(e) When analyzing the assemblage of the various estates or component parts of a property, an appraiser must analyze the effect on value, if any, of the assemblage. An appraiser must refrain from valuing the whole solely by adding together the individual values of the various estates or component parts.

Comment: Although the value of the whole may be equal to the sum of the separate estates or parts, it also may be greater than or less than the sum of such estates or parts.

(f) When analyzing anticipated public or private improvements, located on or off the site, an appraiser must analyze the effect on value, if any, of such anticipated improvements to the extent they are reflected in market actions.[26]

(g) When personal property, trade fixtures, or intangible assets are included in the appraisal, the appraiser must analyze the effect on value of such non-real property assets.

Comment: When the scope of work includes an appraisal of personal property, trade fixtures, or intangible assets, competency in personal property appraisal (see STANDARD 7) or business appraisal (see STANDARD 9) is required.

**STANDARDS RULE 1-5, SALE AGREEMENTS, OPTIONS, LISTINGS, AND PRIOR SALES**
When the value opinion to be developed is market value, an appraiser must, if such information is available to the appraiser in the normal course of business:[27]

(a) analyze all agreements of sale, options, and listings of the subject property current as of the effective date of the appraisal; and

(b) analyze all sales of the subject property that occurred within the three (3) years prior to the effective date of the appraisal.[28]

**STANDARDS RULE 1-6, RECONCILIATION**
In developing a real property appraisal, an appraiser must:

(a) reconcile the quality and quantity of data available and analyzed within the approaches used; and

(b) reconcile the applicability and relevance of the approaches, methods and techniques used to arrive at the value conclusion(s).

---

[26]    See Advisory Opinion 17, *Appraisals of Real Property with Proposed Improvements.*
[27]    See Advisory Opinion 24, *Normal Course of Business.*
[28]    See Advisory Opinion 1, *Sales History.*

# STANDARD 2: REAL PROPERTY APPRAISAL, REPORTING

**In reporting the results of a real property appraisal, an appraiser must communicate each analysis, opinion, and conclusion in a manner that is not misleading.**

> Comment: STANDARD 2 addresses the content and level of information required in a report that communicates the results of a real property appraisal.
>
> STANDARD 2 does not dictate the form, format, or style of real property appraisal reports. The substantive content of a report determines its compliance.

**STANDARDS RULE 2-1, GENERAL REPORTING REQUIREMENTS**
**Each written or oral real property appraisal report must:**

(a) clearly and accurately set forth the appraisal in a manner that will not be misleading;

(b) contain sufficient information to enable the intended user(s) of the appraisal to understand the report properly; and

(c) clearly and accurately disclose all assumptions, extraordinary assumptions, hypothetical conditions, and limiting conditions used in the assignment.

**STANDARDS RULE 2-2, CONTENT OF A REAL PROPERTY APPRAISAL REPORT**
**Each written real property appraisal report must be prepared under one of the following options and prominently state which option is used: Appraisal Report or Restricted Appraisal Report.[29]**

**An appraiser may use any other label in addition to, but not in place of, the labels set forth in this Standards Rule for the type of report provided. The use of additional labels such as analysis, consultation, evaluation, study, or valuation does not exempt an appraiser from adherence to USPAP.**

**The report content and level of information requirements in this Standards Rule are minimums for each type of report. An appraiser must supplement a report form, when necessary, to ensure that any intended user of the appraisal is not misled and that the report complies with the applicable content requirements.**

(a) **The content of an Appraisal Report must be appropriate for the intended use of the appraisal and, at a minimum:**

    (i) state the identity of the client; or if the client requested anonymity, state that the identity is withheld at the client's request but is retained in the appraiser's workfile;[30]

> Comment: Because the client is an intended user, they must be identified in the report as such. However, if the client has requested anonymity the appraiser must use care when identifying the client to avoid violations of the Confidentiality section of the ETHICS RULE.

    **(ii) state the identity of any other intended user(s) by name or type;**

> Comment: A party receiving a copy of an Appraisal Report in order to satisfy disclosure requirements does not become an intended user of the appraisal unless the appraiser identifies such party as an intended user as part of the assignment.

    **(iii) state the intended use of the appraisal;**

---

[29] See Advisory Opinion 38, *Content of an Appraisal Report and Restricted Appraisal Report*.

[30] See Advisory Opinion 25, *Clarification of the Client in a Federally Related Transaction*. See also Advisory Opinion 36, *Identification and Disclosure of Client, Intended Use, and Intended Users*. Also applicable to Standards Rules 2-2(a)(ii) and (iii).

(iv)    **contain information, documents, and/or exhibits sufficient to identify the real estate involved in the appraisal, including the physical, legal, and economic property characteristics relevant to the assignment;[31]**

(v)     **state the real property interest appraised;**

(vi)    **state the type and definition of value and cite the source of the definition;**

Comment: Stating the definition of value also requires any comments needed to clearly indicate to the intended users how the definition is being applied.

When reporting an opinion of value, state whether the opinion is:

- in terms of cash or of financing terms equivalent to cash; or
- based on non-market financing or financing with unusual conditions or incentives.

When an opinion of value is based on non-market financing terms or financing with unusual conditions or incentives, summarize the terms of such financing and explain any influences on value.

When an opinion of reasonable exposure time has been developed in compliance with Standards Rule 1-2(c), the opinion must be stated in the report.[32]

(vii)   **state the effective date of the appraisal and the date of the report;[33]**

(viii)  **summarize the scope of work used to develop the appraisal;[34]**

Comment: Summarizing the scope of work includes disclosure of research and analyses performed and might also include disclosure of research and analyses not performed.

(ix)    **summarize the extent of any significant real property appraisal assistance;**

(x)     **provide sufficient information to indicate that the appraiser complied with the requirements of STANDARD 1 by:**

(1)    **summarizing the appraisal methods and techniques employed;**

(2)    **stating the reasons for excluding the sales comparison, cost, or income approach(es) if any have not been developed;**

(3)    **summarizing the results of analyzing the subject sales, agreements of sale, options, and listings in accordance with Standards Rule 1-5;[35]**

Comment: If such information is unobtainable, a statement on the efforts undertaken by the appraiser to obtain the information is required. If such information is irrelevant, a statement acknowledging the existence of the information and citing its lack of relevance is required.

(4)    **stating the value opinion(s) and conclusion(s); and**

(5)    **summarizing the information analyzed and the reasoning that supports the analyses, opinions, and conclusions, including reconciliation of the data and approaches;**

(xi)    **state the use of the real estate existing as of the effective date and the use of the real estate reflected in the**

---

[31]   See Advisory Opinion 2, *Inspection of Subject Property*, and Advisory Opinion 23, *Identifying the Relevant Characteristics of the Subject Property of a Real Property Appraisal Assignment.*

[32]   See Advisory Opinion 35, *Reasonable Exposure Time in Real and Personal Property Opinions of Value.*

[33]   See Advisory Opinion 34, *Retrospective and Prospective Value Opinions.*

[34]   See Advisory Opinion 28, *Scope of Work Decision, Performance, and Disclosure*, and Advisory Opinion 29, *An Acceptable Scope of Work.*

[35]   See Advisory Opinion 1, *Sales History.*

appraisal;

(xii)   when an opinion of highest and best use was developed by the appraiser, state that opinion and summarize the support and rationale for that opinion;

(xiii)  clearly and conspicuously:

- state all extraordinary assumptions and hypothetical conditions; and
- state that their use might have affected the assignment results; and

(xiv)   include a signed certification in accordance with Standards Rule 2-3.

(b)   The content of a Restricted Appraisal Report must be appropriate for the intended use of the appraisal and, at a minimum:

(i)   state the identity of the client, or if the client requested anonymity, state that the identity is withheld at the client's request but is retained in the appraiser's workfile;[36]

Comment: Because the client is an intended user, they must be identified in the report as such. However, if the client has requested anonymity the appraiser must use care when identifying the client to avoid violations of the Confidentiality section of the ETHICS RULE.

(ii)   state the identity of any other intended user(s) by name;

Comment: A Restricted Appraisal Report may be provided when the client is the only intended user; or, when additional intended users are identified by name.

A party receiving a copy of a Restricted Appraisal Report in order to satisfy disclosure requirements does not become an intended user of the appraisal unless the appraiser identifies such party as an intended user as part of the assignment.

(iii)  clearly and conspicuously state a restriction that limits use of the report to the client and the named intended user(s);

(iv)   clearly and conspicuously warn that the report may not contain supporting rationale for all of the opinions and conclusions set forth in the report;

(v)   state the intended use of the appraisal;

(vi)   state information sufficient to identify the real estate involved in the appraisal;[37]

(vii)  state the real property interest appraised;

(viii) state the type of value and cite the source of its definition;

Comment: When an opinion of reasonable exposure time has been developed in compliance with Standards Rule 1-2(c), the opinion must be stated in the report.[38]

(ix)   state the effective date of the appraisal and the date of the report;[39]

(x)   state the scope of work used to develop the appraisal;[40]

Comment: Stating the scope of work includes disclosure of research and analyses performed and might also

---

[36]   See Advisory Opinion 36, *Identification and Disclosure of Client, Intended Use, and Intended Users*. Also applicable to Standards Rules 2-2(b)(ii) and (v).
[37]   See Advisory Opinion 2, *Inspection of Subject Property, and Advisory Opinion 23, Identifying the Relevant Characteristics of the Subject Property of a Real Property Appraisal Assignment.*
[38]   See Advisory Opinion 35, *Reasonable Exposure Time in Real Property and Personal Property Opinions of Value.*
[39]   See Advisory Opinion 34, *Retrospective and Prospective Value.*
[40]   See Advisory Opinions 28, *Scope of Work Decision, Performance, and Disclosure*, and Advisory Opinion 29, *An Acceptable Scope of Work.*

include disclosure of research and analyses not performed.

(xi)   state the extent of any significant real property appraisal assistance;[41]

(xii)  provide sufficient information to indicate that the appraiser complied with the requirements of STANDARD 1 by:

    (1)   stating the appraisal methods and techniques employed;

    (2)   stating the reasons for excluding the sales comparison, cost, or income approach(es) if any have not been developed;

    (3)   summarizing the results of analyzing the subject sales, agreements of sale, options, and listings in accordance with Standards Rule 1-5;[42] and

       Comment: If such information is unobtainable, a statement on the efforts undertaken by the appraiser to obtain the information is required. If such information is irrelevant, a statement acknowledging the existence of the information and citing its lack of relevance is required.

    (4)   stating the value opinion(s) and conclusion(s);

       Comment: An appraiser must maintain a workfile that includes sufficient information to indicate that the appraiser complied with the requirements of STANDARD 1 and for the appraiser to produce an Appraisal Report.[43]

(xiii) state the use of the real estate existing as of the effective date and the use of the real estate reflected in the appraisal;

(xiv)  when an opinion of highest and best use was developed by the appraiser, state that opinion;

(xv)   clearly and conspicuously:

- state all extraordinary assumptions and hypothetical conditions; and
- state that their use might have affected the assignment results; and

(xvi)  include a signed certification in accordance with Standards Rule 2-3.

**STANDARDS RULE 2-3, CERTIFICATION**
**A signed certification is an integral part of the appraisal report.**

(a)  **The wording of a certification does not have to match the following verbatim, but each of the elements must be addressed:**

**I certify that, to the best of my knowledge and belief:**

— the statements of fact contained in this report are true and correct.
— the reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions and are my personal, impartial, and unbiased professional analyses, opinions, and conclusions.
— I have no (or the specified) present or prospective interest in the property that is the subject of this report and no (or the specified) personal interest with respect to the parties involved.
— I have performed no (or the specified) services, as an appraiser or in any other capacity, regarding the property

---

[41]   See Advisory Opinion 31, *Assignments Involving More than One Appraiser*.
[42]   See Advisory Opinion 1, *Sales History*.
[43]   See RECORD KEEPING RULE.

that is the subject of this report within the three-year period immediately preceding the agreement to perform this assignment.

— I have no bias with respect to the property that is the subject of this report or to the parties involved with this assignment.

— my engagement in this assignment was not contingent upon developing or reporting predetermined results.

— my compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.

— my analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the *Uniform Standards of Professional Appraisal Practice*.

— I have (or have not) made a personal inspection of the property that is the subject of this report. (If more than one person signs this certification, the certification must clearly specify which individuals did and which individuals did not make a personal inspection of the appraised property.)[44]

— no one provided significant real property appraisal assistance to the person signing this certification. (If there are exceptions, the name of each individual providing significant real property appraisal assistance must be stated.)[45]

(b) **An appraiser who signs any part of the appraisal report, including a letter of transmittal, must also sign a certification.**

> Comment: In an assignment that includes only assignment results developed by the real property appraiser(s), any appraiser who signs a certification accepts full responsibility for all elements of the certification, for the assignment results, and for the contents of the appraisal report. In an assignment that includes personal property, business or intangible asset assignment results not developed by the real property appraiser(s), any real property appraiser who signs a certification accepts full responsibility for the real property elements of the certification, for the real property assignment results, and for the real property contents of the appraisal report.

(c) **When a signing appraiser has relied on work done by appraisers and others who do not sign the certification, the signing appraiser is responsible for the decision to rely on their work.**

    (i)    **The signing appraiser is required to have a reasonable basis for believing that those individuals performing the work are competent; and**

    (ii)    **The signing appraiser must have no reason to doubt that the work of those individuals is credible.**

> Comment: Although a certification must contain the names of individuals providing significant real property appraisal assistance, it is not required that a summary of the extent of their assistance be located in a certification. This disclosure may be in any part(s) of the report.

(d) **When an assignment requires the use of a certification that does not include all of the certification elements in this Standards Rule, the appraisal report must contain a supplemental certification, which includes the remaining required certification elements.**

**STANDARDS RULE 2-4, ORAL APPRAISAL REPORT**
**To the extent that it is both possible and appropriate, an oral real property appraisal report must address the substantive matters set forth in Standards Rule 2-2(a).**

> Comment: See the RECORD KEEPING RULE for corresponding requirements.

---

[44]    See Advisory Opinion 2, *Inspection of Subject Property*.

[45]    See Advisory Opinion 31, *Assignments Involving More than One Appraiser*.

# STANDARD 3: APPRAISAL REVIEW, DEVELOPMENT

**In developing an appraisal review, an appraiser must identify the problem to be solved, determine the scope of work necessary to solve the problem, and correctly complete research and analyses necessary to produce a credible appraisal review.**

> Comment: The requirements set forth in STANDARD 3 generally follow the appraisal review development process in the order of topics addressed and can be used by appraisers and the users of appraisal services as a checklist.

> In this Standard, the term "reviewer" is used to refer to an appraiser performing an appraisal review.

**STANDARDS RULE 3-1, GENERAL DEVELOPMENT REQUIREMENTS**
**In developing an appraisal review, the reviewer must:**

(a) **be aware of, understand, and correctly employ those methods and techniques that are necessary to produce a credible appraisal review;**

> Comment: Changes and developments in economics, finance, law, technology, and society can have a substantial impact on the appraisal profession. To keep abreast of these changes and developments, the appraisal profession is constantly reviewing and revising appraisal methods and techniques and devising new methods and techniques to meet new circumstances. Each appraiser must continuously improve his or her skills to remain proficient in appraisal review.

> The reviewer must have the knowledge and experience needed to identify and perform the scope of work necessary to produce credible assignment results. Aspects of competency for an appraisal review, depending on the review assignment's scope of work, may include, without limitation, familiarity with the specific type of property or asset, market, geographic area, analytic method, and applicable laws, regulations and guidelines.

(b) **not commit a substantial error of omission or commission that significantly affects an appraisal review; and**

> Comment: A reviewer must use sufficient care to avoid errors that would significantly affect his or her opinions and conclusions. Diligence is required to identify and analyze the factors, conditions, data, and other information that would have a significant effect on the credibility of the assignment results.

(c) **not render appraisal review services in a careless or negligent manner, such as making a series of errors that, although individually might not significantly affect the results of an appraisal review, in the aggregate affects the credibility of those results.**

**STANDARDS RULE 3-2, PROBLEM IDENTIFICATION**
**In developing an appraisal review, the reviewer must:**

(a) **identify the client and other intended users;[46]**

(b) **identify the intended use of the reviewer's opinions and conclusions;**

> Comment: A reviewer must not allow the intended use of an assignment or a client's objectives to cause the assignment results to be biased. A reviewer must not advocate for a client's objectives.

> The intended use refers to the use of the reviewer's opinions and conclusions by the client and other intended users; examples include, without limitation, quality control, audit, qualification, or confirmation.

---

[46]    See Advisory Opinion 36, *Identification and Disclosure of Client, Intended Use, and Intended Users*. Also applicable to Standards Rule 3-2(b).

(c) **identify the purpose of the appraisal review, including whether the assignment includes the development of the reviewer's own opinion of value or review opinion related to the work under review;**[47]

Comment: The purpose of an appraisal review assignment relates to the reviewer's objective; examples include, without limitation, to determine if the results of the work under review are credible for the intended user's intended use, or to evaluate compliance with relevant USPAP requirements, client requirements, or applicable regulations.

In the review of an appraisal assignment, the reviewer may provide an opinion of value for the property that is the subject of the work under review.

In the review of an appraisal review assignment, the reviewer may provide an opinion of quality of the work that is the subject of the appraisal review assignment.

(d) **identify the work under review and the characteristics of that work which are relevant to the intended use and purpose of the appraisal review, including:**

   (i)    **any ownership interest in the property that is the subject of the work under review;**

   (ii)   **the date of the work under review and the effective date of the opinions or conclusions in the work under review;**

   (iii)  **the appraiser(s) who completed the work under review, unless the identity is withheld by the client; and**

   (iv)   **the physical, legal, and economic characteristics of the property, properties, property type(s), or market area in the work under review;**

Comment: The subject of an appraisal review assignment may be all or part of a report, a workfile, or a combination of these, and may be related to an appraisal or appraisal review assignment.

(e) **identify any extraordinary assumptions necessary in the review assignment. An extraordinary assumption may be used in an assignment only if:**

   (i)    **the extraordinary assumption is required to properly develop credible opinions and conclusions;**

   (ii)   **the reviewer has a reasonable basis for the extraordinary assumption; and**

   (iii)  **use of the extraordinary assumption results in a credible analysis;**

(f) **identify any hypothetical conditions necessary in the review assignment. A hypothetical condition may be used in an assignment only if:**

   (i)    **use of the hypothetical condition is clearly required for legal purposes, for purposes of reasonable analysis, or for purposes of comparison; and**

   (ii)   **use of the hypothetical condition results in a credible analysis; and**

(g) **determine the scope of work necessary to produce credible assignment results in accordance with the SCOPE OF WORK RULE.**[48]

Comment: Reviewers have broad flexibility and significant responsibility in determining the appropriate scope of work in an appraisal review assignment.

Information that should have been considered by the original appraiser can be used by the reviewer in developing an

---

[47]    See Advisory Opinion 20, *An Appraisal Review Assignment That Includes the Reviewer's Own Opinion of Value.*

[48]    See Advisory Opinion 28, *Scope of Work Decision, Performance, and Disclosure*, and Advisory Opinion 29, *An Acceptable Scope of Work.*

opinion as to the quality of the work under review.


Information that was not available to the original appraiser in the normal course of business may also be used by the reviewer; however, the reviewer must not use such information in the reviewer's development of an opinion as to the quality of the work under review.

**STANDARDS RULE 3-3, APPRAISAL REVIEW METHODS**
**In developing an appraisal review, a reviewer must apply the appraisal review methods and techniques that are necessary for credible assignment results.**

(a) **When necessary for credible assignment results in the review of analyses, opinions, and conclusions, the reviewer must:**

    (i) **develop an opinion as to whether the analyses are appropriate within the context of the requirements applicable to that work;**

    (ii) **develop an opinion as to whether the opinions and conclusions are credible within the context of the requirements applicable to that work; and**

    (iii) **develop the reasons for any disagreement.**

Comment: Consistent with the reviewer's scope of work, the reviewer is required to develop an opinion as to the completeness, accuracy, adequacy, relevance, and reasonableness of the analysis in the work under review, given law, regulations, or intended user requirements applicable to the work under review.

(b) **When necessary for credible assignment results in the review of a report, the reviewer must:**

    (i) **develop an opinion as to whether the report is appropriate and not misleading within the context of the requirements applicable to that work; and**

    (ii) **develop the reasons for any disagreement.**

Comment: Consistent with the reviewer's scope of work, the reviewer is required to develop an opinion as to the completeness, accuracy, adequacy, relevance, and reasonableness of the report, given law, regulations, or intended user requirements applicable to that work.

(c) **When the assignment includes the reviewer developing his or her own opinion of value or review opinion, the following apply:**[49]

    (i) **The requirements of STANDARDS 1, 5, 7, or 9 apply to the reviewer's opinion of value for the property that is the subject of the appraisal review assignment.**

    (ii) **The requirements of STANDARD 3 apply to the reviewer's opinion of quality for the work that is the subject of the appraisal review assignment.**

    Comment: These requirements apply to:

        • The reviewer's own opinion of value when the subject of the review is the product of an appraisal assignment; or

        • The reviewer's own opinion regarding the work reviewed by another when the subject of the review is the product of an appraisal review assignment.

    These requirements apply whether the reviewer's own opinion:

---

[49] See Advisory Opinion 20, *An Appraisal Review Assignment That Includes the Reviewer's Own Opinion of Value.*

- concurs with the opinions and conclusions in the work under review; or
- differs from the opinions and conclusions in the work under review.

When the assignment includes the reviewer developing his or her own opinion of value or review opinion, the following apply:

- The reviewer's scope of work in developing his or her own opinion of value or review opinion may be different from that of the work under review.
- The effective date of the reviewer's opinion of value may be the same or different from the effective date of the work under review.
- The reviewer is not required to replicate the steps completed by the original appraiser. Those items in the work under review that the reviewer concludes are credible can be extended to the reviewer's development process on the basis of an extraordinary assumption. Those items not deemed to be credible must be replaced with information or analysis developed in conformance with STANDARD 1, 3, 5, 7, or 9, as applicable, to produce credible assignment results.

# STANDARD 4: APPRAISAL REVIEW, REPORTING

**In reporting the results of an appraisal review, an appraiser must communicate each analysis, opinion, and conclusion in a manner that is not misleading.**

> Comment: STANDARD 4 addresses the content and level of information required in a report that communicates the results of an appraisal review. STANDARD 4 does not dictate the form, format, or style of appraisal review reports. The substantive content of an appraisal review report determines its compliance.

**STANDARDS RULE 4-1, GENERAL REPORTING REQUIREMENTS**
**Each written or oral appraisal review report must be separate from the work under review and must:**

(a) **clearly and accurately set forth the appraisal review in a manner that will not be misleading;**

(b) **contain sufficient information to enable the intended user(s) of the appraisal review to understand the report properly; and**

(c) **clearly and accurately disclose all assumptions, extraordinary assumptions, hypothetical conditions, and limiting conditions used in the assignment.**

**STANDARDS RULE 4-2, CONTENT OF AN APPRAISAL REVIEW REPORT**
**The content of an appraisal review report must be appropriate for the intended use of the appraisal review and, at a minimum:**

(a) **state the identity of the client, or if the client requested anonymity, state that the identity is withheld at the client's request but is retained in the appraiser's workfile; state the identity of any intended user(s) by name or type;[50]**

> Comment:  Because the client is an intended user, they must be identified in the review report as such. However, if the client has requested anonymity the reviewer must use care when identifying the client to avoid violations of the <u>Confidentiality</u> section of the ETHICS RULE.

(b) **state the intended use of the appraisal review;**

(c) **state the purpose of the appraisal review;**

(d) **state information sufficient to identify:**

    (i) **the  work under review, including any ownership interest in the property that is the subject of the work under review;**

    (ii) **the date of the work under review;**

    (iii) **the effective date of the opinions or conclusions in the work under review; and**

    (iv) **the appraiser(s) who completed the work under review, or if the client has withheld their identity, state that the identity of the appraiser(s) has been withheld by the client;**

(e) **state the date of the appraisal review report;**

(f) **clearly and conspicuously:**

- **state all extraordinary assumptions and hypothetical conditions; and**
- **state that their use might have affected the assignment results.**

---

[50]    See Advisory Opinion 36, *Identification and Disclosure of Client, Intended Use, and Intended Users.*

(g) **state the scope of work used to develop the appraisal review;**[51]

Comment: Stating the scope of work includes disclosure of research and analyses performed and might also include disclosure of research and analyses not performed.

(h) **when any portion of the work involves significant appraisal or appraisal review assistance, state the extent of that assistance;**[52]

(i) **state the reviewer's opinions and conclusions about the work under review, including the reasons for any disagreement;**

Comment: The report must provide sufficient information to enable the client and intended users to understand the rationale for the reviewer's opinions and conclusions.

(j) **when the scope of work includes the reviewer's development of an opinion of value or review opinion related to the work under review, the reviewer must:**[53]

  (i) **state which information, analyses, opinions, and conclusions in the work under review that the reviewer accepted as credible and used in developing the reviewer's opinions and conclusions;**

  (ii) **if applicable, state the effective date of the reviewer's opinion of value;**

  (iii) **at a minimum, summarize any additional information relied on and the reasoning for the reviewer's opinion of value or review opinion related to the work under review; and**

  Comment: The reviewer may include his or her own opinion of value or review opinion related to the work under review within the appraisal review report itself without preparing a separate report. However, data and analyses provided by the reviewer to support a different opinion or conclusion must match, at a minimum, except for the certification requirements, the reporting requirements for an:

  - Appraisal Report for a real property appraisal (Standards Rule 2-2(a));
  - Appraisal Report for a personal property appraisal (Standards Rule 8-2(a));
  - Appraisal Review Report for an appraisal review (Standards Rule 4-2);
  - Mass Appraisal Report for mass appraisal (Standards Rule 6-2); and
  - Appraisal Report for business appraisal (Standards Rule 10-2(a)).

(k) **include a signed certification in accordance with Standards Rule 4-3.**

**STANDARDS RULE 4-3, CERTIFICATION**
A signed certification is an integral part of the appraisal review report.

(a) **The wording of a certification does not have to match the following verbatim, but each of the elements must be addressed:**

I certify that, to the best of my knowledge and belief:

  — **the statements of fact contained in this report are true and correct.**
  — **the reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions and are my personal, impartial, and unbiased professional analyses, opinions, and conclusions.**
  — **I have no (or the specified) present or prospective interest in the property that is the subject of the work under review and no (or the specified) personal interest with respect to the parties involved.**
  — **I have performed no (or the specified) services, as an appraiser or in any other capacity, regarding the property that is the subject of the work under review within the three-year period immediately preceding the agreement**

---

[51]  See Advisory Opinion 28, *Scope of Work Decision, Performance, and Disclosure*, and Advisory Opinion 29, *An Acceptable Scope of Work.*
[52]  See Advisory Opinion 31, *Assignments Involving More than One Appraiser.*
[53]  See Advisory Opinion 20, *An Appraisal Review Assignment That Includes the Reviewer's Own Opinion of Value.*

to perform this assignment.
— I have no bias with respect to the property that is the subject of the work under review or to the parties involved with this assignment.
— my engagement in this assignment was not contingent upon developing or reporting predetermined results.
— my compensation is not contingent on an action or event resulting from the analyses, opinions, or conclusions in this review or from its use.
— my compensation for completing this assignment is not contingent upon the development or reporting of predetermined assignment results or assignment results that favors the cause of the client, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal review.
— my analyses, opinions, and conclusions were developed and this review report was prepared in conformity with the *Uniform Standards of Professional Appraisal Practice*.
— I have (or have not) made a personal inspection of the subject of the work under review. (If more than one person signs this certification, the certification must clearly specify which individuals did and which individuals did not make a personal inspection of the subject of the work under review.) (For reviews of a business or intangible asset appraisal assignment, the inspection portion of the certification is not applicable.)[54]
— no one provided significant appraisal or appraisal review assistance to the person signing this certification. (If there are exceptions, the name of each individual providing appraisal or appraisal review assistance must be stated.)[55]

(b) A reviewer who signs any part of the appraisal review report, including a letter of transmittal, must also sign a certification.

Comment: Any reviewer who signs a certification accepts responsibility for all elements of the certification, for the assignment results, and for the contents of the appraisal review report.

Appraisal review is distinctly different from the cosigning activity addressed in Standards Rules 2-3, 6-3, 8-3, and 10-3. To avoid confusion between these activities, a reviewer performing an appraisal review must not sign the work under review unless he or she intends to accept responsibility as a cosigner of that work.

(c) When a signing appraiser has relied on work done by appraisers and others who do not sign the certification, the signing appraiser is responsible for the decision to rely on their work.

(i) The signing appraiser is required to have a reasonable basis for believing that those individuals performing the work are competent; and

(ii) The signing appraiser must have no reason to doubt that the work of those individuals is credible.

Comment: Although a certification must contain the names of individuals providing significant appraisal or appraisal review assistance, it is not required that a summary of the extent of their assistance be located in a certification. This disclosure may be in any part(s) of the report.

(d) If the assignment requires the use of a certification that does not include all of the certification elements in this Standards Rule, the appraisal review report must contain a supplemental certification, which includes the remaining required certification elements.

**STANDARDS RULE 4-4, ORAL APPRAISAL REVIEW REPORT**
**To the extent that it is both possible and appropriate, an oral appraisal review report must address the substantive matters set forth in Standards Rules 4-2.**

Comment: See the RECORD KEEPING RULE for corresponding requirements.

---

[54] See Advisory Opinion 2, *Inspection of Subject Property*.
[55] See Advisory Opinion 31, *Assignments Involving More than One Appraiser*.